IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**JORDAN HICKS, individually and on behalf
of all others similarly situated**                                             **PLAINTIFF**

**v.**                               **Case No. 3:18-cv-00133-KGB**

**LINDSEY MANAGEMENT CO., INC.,
and SCOTT ROGERSON**                                                         **DEFENDANTS**

## ORDER

Plaintiff Jordan Hicks brings this proposed collective action against defendants Lindsey Management Co. ("Lindsey Management") and Scott Rogerson, the president and chief financial officer of Lindsey Management. Mr. Hicks alleges that Lindsey Management erroneously calculated his and other similarly situated employees' overtime rate of pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq.* Before the Court is Mr. Hicks's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 8). Lindsey Management responded in opposition to the motion (Dkt. No. 13), and Mr. Hicks replied (Dkt. No. 14). For the reasons that follow, the Court grants in part and denies in part Mr. Hicks's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 8).

    **I.**     **Background**

Mr. Hicks is a former hourly-paid employee of Lindsey Management, headquartered in Fayetteville, Arkansas (Dkt. No. 1, ¶¶ 12, 16). Mr. Hicks alleges that, during his employment, he was responsible for maintenance, repair, and general upkeep of Lindsey Management's apartment complexes (*Id.*, ¶ 27). He asserts that he and all other hourly-paid employees who lived on-

premises were classified as hourly employees and paid an hourly rate (*Id.*, ¶ 29).  Mr. Hicks asserts that he regularly worked in excess of 40 hours per week (*Id.*, ¶ 28).  According to Mr. Hicks, he and other hourly-paid employees who lived on-premises were given a rent discount and were paid one and a half times their base hourly rate for each hour they worked over 40 hours in a work week (*Id.*, ¶¶ 30, 31).  However, Mr. Hicks alleges that Lindsey Management did not include all forms of compensation, such as the rent discounts given to Mr. Hicks and other hourly-paid employees who lived on-premises, in its regular rate of pay when calculating the overtime rate of pay (*Id.*, ¶ 32).  In his present motion, Mr. Hicks seeks conditional certification of the following collective: "[a]ll hourly employees who lived on-premises, received a rent credit, and who worked more than [40] hours in any week since July 24, 2015" (Dkt. No. 8, ¶ 3).

**II.    Analysis**

    **A.    FLSA Conditional Certification**

Under the FLSA:

> An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Many district courts in the Eighth Circuit Court of Appeals utilize a two-step approach in collective action cases.  At the notice stage, the Court must determine, based on the pleadings and affidavits, whether notice should be given to potential class members.  The key issue is whether the members of the proposed class are similarly situated.  If the Court allows notification, then a representative class is conditionally certified, and Mr. Hicks will send notice to the putative opt-in plaintiffs.  At the second stage, the Court determines whether to decertify the class once

discovery is largely complete. *Smith v. Frac Tech Services, Ltd.*, No. 4:09-cv-679, 2009 WL 4251017, at *2 (E.D. Ark. Nov. 24, 2009) (citation omitted). This Court has previously adopted this approach. *See McChesney v. Holtger Bros., Inc.*, No. 4:17-cv-824, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-cv-843, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012); *Cruthis v. Vision's*, No. 4:12-cv-244, 2013 WL 4028523, at *1-2 (E.D. Ark. Aug. 7, 2013).

"'To establish that conditional certification is appropriate, the plaintiff[] must provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (alteration in original) (quoting *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008)). Mr. Hicks's burden at the notice stage is lenient and may be met by making a "modest factual showing," typically by the submission of affidavits, that he and the putative class were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106-08 (10th Cir. 2001)). However, while this is a "lenient standard, . . . 'more than mere allegations' are required." *Tegtmeier*, 208 F. Supp. 3d at 1018 (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citation omitted). The Court can consider a variety of non-exclusive factors in determining whether employees are similarly situated. Such factors include: (1) whether the employees held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period;

(4) whether the employees were subjected to the same policies and practices and, if so, whether the policies and practices were established in the same manner and by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Stone v. First Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1090, 1097-99 (11th Cir. 1996)). "The Court does not need to determine whether class members are *actually* similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class." *Tinsley v. Covenant Care Servs., LLC*, No. 1:14-cv-00026-ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (emphasis in original) (citing *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016-17 (E.D. Mo. 2010)).

In a sworn affidavit, Mr. Hicks contends that he worked as an hourly-paid employee for Lindsey Management from August 2017 until July 2018 and lived on-premises during that time (Dkt. No. 8-7, ¶ 4). Mr. Hicks alleges that his duties included performing maintenance, repair, and general upkeep at the apartment complex where he lived (*Id.*, ¶ 6). In addition to his hourly wage, Mr. Hicks received a monthly rent credit from Lindsey Management while he lived on-premises (*Id.*, ¶ 7). Mr. Hicks alleges that he personally observed the work of other hourly-paid employees and talked to them about their job duties (*Id.*, ¶ 9). He further alleges that Lindsey Management communicated to him that some of his duties were also the duties of other hourly-paid employees who lived on-premises (*Id.*). Mr. Hicks asserts that, due to the nature of the job, hourly-paid employees who live on-premises have been and are often required to work more than 40 hours per week and that it is common for an hourly-paid employee who lives on-premises to work more than 40 hours (*Id.*, ¶ 10). According to Mr. Hicks, he and other hourly-paid employees who lived on-premises received a monthly rent credit and were paid overtime wages of one and one half times

their regular hourly rate for all the hours they worked in excess of 40 hours (*Id.*, ¶ 11). He contends that the company policy for reducing rent applied to maintenance workers, leasing consultants, maintenance supervisors, property managers, and assistant property managers (*Id.*, ¶ 13). Mr. Hicks avers that Lindsey Management did not include the rent credit when it calculated the overtime premium for its hourly-paid employees who worked more than 40 hours per week and lived on-premises (*Id.*, ¶ 14). Mr. Hicks admits that he does not know the exact number of people who were subject to Lindsey Management's policy of calculating overtime premiums, but he estimates that there are at least 200 other class members (*Id.*, ¶ 15). He believes that at least some other hourly-paid employees who live or lived on-premises would be interested in participating in this lawsuit (*Id.*, ¶ 16). He asserts that Lindsey Management owns and operates multiple apartment complexes throughout Arkansas as well as in other states (*Id.*, ¶ 5).

In addition to his own sworn affidavit, Mr. Hicks provides a sworn affidavit by Crystal Lovette (Dkt. No. 8-8). In the affidavit, Ms. Lovette alleges that she was employed by Lindsey Management from November 2017 to July 2018 as an hourly-paid employee who lived on-premises (*Id.*, ¶ 4). Ms. Lovette alleges that she worked as a leasing consultant and was responsible for showing and leasing apartments as well as maintaining the leasing office at the apartment complex where she lived and that her duties included greeting and assisting residents and guests, showing and leasing apartments, and maintaining the leasing office at the complex (*Id.*, ¶¶ 6, 8). She claims that she was paid an hourly wage and received a monthly rent credit while she lived on-premises (*Id.*, ¶ 7). Ms. Lovette alleges that she personally observed the work of other hourly-paid employees who lived on-premises and talked to them about their job duties (*Id.*, ¶ 9). She further alleges that Lindsey Management communicated to her that some of her duties were also the duties of other hourly-paid employees who lived on-premises (*Id.*). Ms. Lovette asserts that,

due to the nature of the job, hourly-paid employees who live on-premises have been and are often required to work more than 40 hours per week and that it is common for an hourly-paid employee who lives on-premises to work more than 40 hours (*Id.*, ¶ 10). According to Ms. Lovette, she and other hourly-paid employees who lived on-premises received a monthly rent credit and were paid overtime wages of one and one half times their regular hourly rate for all the hours they worked in excess of 40 hours (*Id.*, ¶ 11). She contends that the company policy for reducing rent applied to maintenance workers, leasing consultants, maintenance supervisors, property managers, and assistant property managers (*Id.*, ¶ 13). Ms. Lovette avers that Lindsey Management did not include the rent credit when it calculated the overtime premium for its hourly-paid employees who worked more than 40 hours per week and lived on-premises (*Id.*, ¶ 14). Ms. Lovette contends that she does not know the exact number of people who were subject to Lindsey Management's policy of calculating overtime premiums, but she estimates that there are at least 200 other class members (*Id.*, ¶ 15). She believes that at least some other hourly-paid employees who live or lived on-premises would be interested in participating in this lawsuit (*Id.*, ¶ 16). She asserts that Lindsey Management owns and operates multiple apartment complexes throughout Arkansas as well as in other states (*Id.*, ¶ 5).

Lindsey Management contends that conditional certification is inappropriate for multiple reasons (Dkt. No. 13). First, Lindsey Management argues that Mr. Hicks has failed to make a preliminary factual showing that a similarly situated group of potential opt-in plaintiffs exists because there are varying factual disparities that are unique to putative plaintiffs (*Id.*, at 6). Lindsey Management asserts that potential plaintiffs include current and former employees who have material differences in their duties and responsibilities, work in different apartment communities located in six states, hold different job titles, and work under different supervisors

(*Id.*, at 7). According to Lindsey Management there is also an inherent potential conflict of interest among some of them because senior or supervisory employees could arguably be complicit in the practice of requiring employees to work overtime without including the rent credit in calculating the overtime premium, and they could be held individually responsible for the potential claims of nonsupervisory employees who are also members of the proposed class (*Id.*, at 8-9). Second, Lindsey Management asserts that Mr. Hicks's evidence is insufficient to demonstrate that he and members of the putative class are similarly situated because he does not have a factual basis to allege that it is common for other hourly-paid employees who live on-premises to work more than 40 hours due to the nature of the job (*Id.*, at 11-12). Third, Lindsey Management contends that Mr. Hicks has failed to provide the Court with evidence that other similarly situated individuals desire to opt into this litigation because neither Mr. Hicks nor Ms. Lovette named any employee or former employee who wishes to opt into this litigation (*Id.*, at 13, 15).

The Court finds that Mr. Hicks has carried his lenient burden of establishing at this stage of the litigation that he is similarly situated to hourly employees who lived on-premises, received a rent credit, and worked more than 40 hours in any week since July 24, 2015. Mr. Hicks's affidavit demonstrates that he was employed as an hourly-paid employee who lived on-premises from August 2017 to July 2018 and that he is personally familiar with other hourly-paid employees who lived on-premises and were employed by Lindsey Management (Dkt. No. 8-7, ¶ 4). Mr. Hicks's affidavit asserts that he and other hourly-paid employees who lived on-premises received monthly rent credits (*Id.*, ¶ 11). Mr. Hicks's affidavit also avers that he and other hourly-paid employees, including maintenance workers, leasing consultants, maintenance supervisors, property managers, and assistant property managers, who lived on-premises were paid overtime wages of one and one half times their regular hourly rate for all hours worked in excess of 40 hours (*Id.*, ¶¶ 11, 13). Mr.

Hicks's affidavit asserts that, due to the nature of the job, hourly-paid employees who live on-premises have been and are often required to work more than 40 hours per week and that it is common for an hourly-paid employee who lives on-premises to work more than 40 hours (*Id.*, ¶ 10). Mr. Hicks's affidavit asserts that Lindsey Management did not include the rent credit when it calculated the overtime premium for its employees who were paid hourly, worked more than 40 hours per week, and lived on-premises (*Id.*, ¶ 14).

The Court concludes that Mr. Hicks's affidavit offers evidence sufficient to show that all members of the proposed class were subjected to a common policy or plan: Lindsey Management's alleged policy or practice of giving a monthly rent credit to hourly-paid employees who lived on-premises but not including the rent credit when calculating the overtime premium for such employees who worked in excess of 40 hours in a week. Such policies have been found sufficient for conditional certification, even where the individual class members' claims varied somewhat. *See Frank v. Gold'n Plump Poultry, Inc.*, No. 04-cv-1018 (PJS/RLE), 2005 WL 2240336, at *3 (D. Minn. Sept. 14, 2005) (finding that employer's alleged policy of not requiring its employees to be paid for donning and doffing was sufficient for conditional certification, even though it was possible that some employees were subjected to different practices by various supervisors).

The Court disagrees with Lindsey Management's arguments that Mr. Hicks has failed to make a preliminary factual showing that a similarly situated group of potential opt-in plaintiffs exists and that he and members of the putative class are similarly situated. At the "notice" stage of conditional certification, Mr. Hicks need not show that all members of the conditionally certified class are identically situated. *See In re Pilgrim's Pride Fair Labor Standards Act Litig.*, MDL Docket No. 1:07-cv-1832, 2008 WL 4877239, at *3 (W.D. Ark. Mar. 13, 2008). The parties may

develop evidence regarding any potential factual disparities among the proposed class to present to the Court at the second stage. Further, based on the record evidence, the Court determines that Mr. Hicks's affidavit and Ms. Lovette's affidavit suffice to show that other similarly situated individuals desire to opt into this litigation.

The Court finds that Mr. Hicks has carried his lenient burden of establishing that he is similarly situated to other Lindsey Management hourly-paid employees who lived on-premises, received a monthly rent credit, and worked in excess of 40 hours in any week since July 24, 2015. Therefore, the Court conditionally certifies this action under the FLSA for purposes of giving notice.

### B. Notice

Mr. Hicks requests that the Court ratify the following notice process as it pertains to potential opt-in plaintiffs: Mr. Hicks would send notice and consent forms (Dkt. Nos. 8-1, 8-2) *via* U.S. Mail; then, Mr. Hicks would send a follow-up postcard *via* U.S. Mail (Dkt. No. 8-5); and the Court would set a 90-day opt-in period. Mr. Hicks requests permission to send a reminder postcard to potential opt-ins who do not respond within 30 days of sending the notice to reduce the risk of mail delivery problems. Furthermore, Mr. Hicks requests that this Court allow him to disseminate notice *via* text message to class members' cell phone numbers (Dkt. No. 8-3) and then to send a follow-up text message to the same phone numbers to which the text message regarding notice was sent (*Id.*). Alternatively, Mr. Hicks requests permission to send one email to all known addresses, including private and company-sponsored addresses, containing an electronic version of the notice (Dkt. No. 8-1) and the consent to join (Dkt. No. 8-4) and a second email from a third-party website, www.Rightsignature.com. The RightSignature service automatically sends a

reminder email 30 days after the initial sending of the electronic consent to join to those who have not yet signed.

The Court grants in part and denies in part Mr. Hicks's motion as it pertains to notice to potential opt-in plaintiffs. The Court grants Mr. Hicks's motion to the extent he seeks to provide potential opt-in plaintiffs with notice *via* U.S. Mail. Accordingly, Mr. Hicks may send one written notice and consent form to the potential opt-in plaintiffs, as well as one follow-up written notice, all *via* U.S. Mail. Mr. Hicks's proposed written notice, consent, and follow-up forms are acceptable (Dkt. Nos. 8-1, 8-2, 8-5). Furthermore, the Court grants Mr. Hicks's motion to the extent he seeks permission to send potential opt-in plaintiffs one email with notice of the action and another from www.Rightsignature.com with an electronic consent form. The proposed emails are acceptable to the Court (Dkt. No. 8-3, at 2). The Court denies without prejudice Mr. Hicks's request to send notice, consent, and follow-up information to the potential opt-in plaintiffs *via* text message.

To facilitate notice, Lindsey Management is ordered to provide to Mr. Hicks's counsel the names, last known mailing addresses, and all known email addresses, including personal and company-sponsored, for the potential opt-in plaintiffs within 21 days of the date of this Order. The Court also directs Lindsey Management to provide such information to Mr. Hicks's counsel *via* Microsoft Word or Excel formatting. After receipt of such information, Mr. Hicks shall then have 90 days to distribute notice and file opt-in consent forms with the Court.

**III. Conclusion**

For the reasons discussed above, the Court grants in part and denies in part Mr. Hicks's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 8). The Court conditionally certifies the following class:

> All hourly employees who lived on-premises, received a rent credit, and who worked more than 40 hours in any week since July 24, 2015.

To facilitate notice, Lindsey Management is ordered to provide to Mr. Hicks's counsel the names, last known mailing addresses, and all known email addresses, including personal and company-sponsored, for the potential opt-in plaintiffs within 21 days of the date of this Order. Mr. Hicks shall have 90 days from the date Lindsey Management provides this information to distribute notice to the potential opt-in plaintiffs and file copies of the consent forms with the Court. Mr. Hicks may provide notice to the class of individuals consistent with the terms of this Order.

It is so ordered this 11th day of February, 2019.

_____
Kristine G. Baker
United States District Judge