IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**JORDAN HICKS, Individually and on
Behalf of All Others Similarly Situated**                                                                   **PLAINTIFF**

vs.                                         No. 3:18-CV-133-KGB

**LINDSEY MANAGEMENT, CO., INC.,
And SCOTT ROGERSON**                                                                                  **DEFENDANTS**

RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT OF DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT

COME NOW Defendants, Lindsey Management Co., Inc. ("Lindsey"), and Scott Rogerson, by and through their undersigned counsel, FRIDAY, ELDREDGE & CLARK, LLP, and for their Response to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment state:

**I.    INTRODUCTION**

The question of law at issue in this case is a narrow one: does the Fair Labor Standards Act ("FLSA") require the inclusion of a rent discount in an employee's regular rate of pay even when the rent discount is not used to compensate or otherwise benefit an employee? Plaintiffs offer an overly simplistic and erroneous argument of the law. Because both parties ask this Court to answer the same question, the argument that follows both refutes Plaintiffs' Motion for Partial Summary Judgment and supports Defendants' Motion for Partial Judgment because they are two sides of the same coin.

Plaintiffs filed their Motion for Partial Summary Judgment on August 28, 2019. Since that time, and with this Court's allowance (*see* Doc. No. 72), the parties have conducted additional discovery, and Defendants now respond to Plaintiffs' Partial Motion for Summary Judgment and file their Cross-Motion for Partial Summary Judgment on the same basis.

Plaintiffs worked in hourly positions at various apartment communities to which Lindsey provides administrative and management services. All plaintiffs were required to live onsite in the apartment community where they worked. Plaintiffs contend that rent discounts should have been included in their regular rate for the purposes of calculating overtime. Plaintiffs' argument, however, assumes that the rent discount was used to compensate employees and was for the employees' benefit. To the contrary, the record reflects that neither Defendants nor Plaintiffs viewed the rent discount as a form of compensation. Instead, the evidence shows that the requirement for employees to live onsite, and the accompanying rent discount, were for the employer's benefit. Further, there is no dispute that Defendants met their minimum wage obligations and paid overtime for all hours worked. The only dispute is whether the regular rate was proper. A careful reading of applicable statutes, regulations, and guidance demonstrates that rent discounts are only included in an employee's regular rate of pay when that discount is used to meet an employer's minimum wage obligation or is otherwise used to compensate an employee. When neither of those conditions is met, the discount is not included in the regular rate.

## II.  FACTUAL BACKGROUND

Lindsey Management Co., Inc. ("Lindsey") provides administrative and management services to apartment communities in six states in the South and Midwest. Lindsey does not own any apartment communities, but has agreements with the owners of various apartment

communities to provide management services. *See* Affidavit of Job Branch ("Branch Aff."), attached to Motion as **Exhibit 1** at ¶ 4. As part of its management services, Lindsey and the owners of these various apartment communities have established that employees of each community are required to live onsite at the community where they work. *See id.* at ¶ 5.

Having employees live onsite benefits the apartment community in several ways, including: 1) the employees are the eyes and ears of the community; 2) the employees are more readily available to the residents of the community; 3) there is an added sense of security for residents of the community; 4) there is an added sense of community for residents of the community; 5) there is an added sense of pride and responsibility in the employees when they live in the community; and 6) it enhances marketing when a leasing employee can tell prospective residents that employees all live in the community. *See id.* at ¶¶ 8(a)-(f). Further, in Arkansas and some other states, laws and regulations require apartment managers and leasing agents to be licensed real estate agents if they are not residents of an apartment complex where they work. *See id.* at ¶ 9. Thus, it benefits Lindsey to require employees to live onsite to ensure legal compliance.

Plaintiffs worked in various hourly-paid positions at various apartment communities. All Plaintiffs were required to live onsite at the apartment community where they worked as a condition of their employment. *See* Affidavit of Betsy Fox ("Fox Aff."), attached to Motion as **Exhibit 2** at ¶¶ 15-17, Exhibit D.[1]  Indeed, multiple opt-in plaintiffs voluntarily left their

---

[1] The job advertisements attached as Exhibit D to Betsy Fox's Affidavit are complete versions of the job advertisements Plaintiffs purported to attach as Exhibit C to their Motion. The versions in Plaintiffs' Exhibit C omit relevant language regarding the requirement to live onsite for all

3

employment when they decided to move offsite.  *See* Fox. Aff. at ¶¶ 5—13, Exhibits A, B, and C; *see also* Affidavit of Jonathan Miller ("Miller Aff."), attached to Motion **Exhibit 3 at** ¶¶ 3—5, Exhibit A.  In each such case the employees in question were reminded that living onsite in the apartment community was a condition of their employment and that they could not continue working at the community if they did not live onsite.  *See id*.  Lindsey provides increasing rent discounts for higher ranked positions because their presence onsite becomes more valuable to the communities they serve.  *See* Fox Aff. at ¶ 20; Betsy Fox Deposition Excerpts ("Fox Dep."), attached to Motion as **Exhibit 4** at 25.  It is the practice of some of the managers of the apartment communities to place employees in promoted positions and then give pay raises, and some to give pay raises at a later date if the employee decides to continue in the promoted position and/or is performing the job adequately, and some do a version of both.  *See* Fox Aff. at ¶ 19.

Lindsey does not use rent discounts as a form of compensation.  Pursuant to Internal Revenue Service ("IRS") regulations, the rent discounts do not constitute income, and therefore, Lindsey does not report them for income-related tax purpose.  *See id*. at ¶ 22.  Likewise, rent discounts do not appear on employee paystubs, and employees do not pay income tax on the rent discounts.  *See id*. at ¶¶ 23—24.  Lindsey does not rely on rent discounts to meet their minimum wage obligations or to otherwise compensate employees.  *See id*. at ¶ 25.  With respect to payment of overtime wages, the parties agree that Lindsey paid overtime wages at one-and-a-half

---

positions Lindsey posts on behalf of apartment communities.  Regardless, Plaintiffs offer no proof that any opt-in Plaintiff applied because of an online job advertisement.

times what Lindsey determined to be the regular rate. *See* (Doc. No. 68 at p. 5). Plaintiffs only dispute whether the regular rate should include the rent discount.

Lindsey has been the subject of several lawsuits alleging violations of the FLSA. Most, if not all, of those suits have involved the law firm representing Plaintiffs in this case. *See* Fox Aff. at ¶¶ 26—27. One of those cases, *Chad Lochridge, et al. v. Lindsey Management Co., Inc. et al.*, U.S.D.C. Case No. 5:12-cv-05047-TLB (W.D. Ark.), involved hourly-paid resident managers, who are also part of this litigation. *See id*. at ¶ 28. During the *Lochridge* litigation, Lindsey produced information during discovery indicating that these employees were required to live onsite and that they received rent discounts. *See id*. at ¶ 29. At no time during *Lochridge* was any claim ever made that the rent discount violated the FLSA. *See id*. at ¶ 30. Further, as a result of the *Lochridge* litigation, Lindsey carefully reviewed the compensation methods used at the properties for potential areas of exposure under the FLSA and to ensure compliance with applicable regulations. *See id*. at ¶ 31. For example, Lindsey changed its bonus calculations to include a percentage bonus so that overtime would be calculated automatically. *See id*. at ¶ 32. While Lindsey never raised specific questions about the rent discounts, they were never flagged during the *Lochridge* litigation or thereafter by counsel as a potential violation of the FLSA. The regulations at issue in this case have not changed since the *Lochridge* litigation.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is

no issue for trial unless there is sufficient evidence for the trier of fact to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-movant must go beyond the pleadings and come forward with *specific facts* showing a genuine issue for trial. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis added). The mere existence of some alleged factual dispute will not defeat a properly-supported motion for summary judgment; the disputed fact must be "outcome determinative". *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

## IV.   ARGUMENT

### a. Introduction

The FLSA requires employers to pay all non-exempt employees at a rate of one-and-a-half times their regular rate for all hours worked over 40 in a week. 29 U.S.C. § 207. An employee's regular rate is the hourly rate an employee is paid for all non-overtime hours worked in a workweek. 29 C.F.R. § 778.108. Certain non-cash items may be included in the regular rate as wages calculation under certain circumstances. With respect to employer-provided lodging, the FLSA requires employers to include the value of lodging in the regular rate calculation only when the lodging is furnished as a form of compensation in addition to cash wages and for the employee's benefit.

Plaintiffs argue Lindsey should have included rent discounts in the calculation of employees' regular rates. Their argument, however, assumes the conditions precedent to inclusion—that the rent discounts were intended as a form of compensation in addition to a cash wage and that they were intended to benefit employees. Examination of the record, however, demonstrates the undisputed facts that neither Lindsey nor the apartment communities' employees viewed the rent discount as a form of wage or compensation, and that the parties

universally viewed the requirement to live onsite as a benefit to the apartment community owner. Because the rent discount was not provided to compensate or benefit employees, it was properly not included in the regular rate. Plaintiffs skip over these threshold issues and reach a conclusion that does not comport with a fair reading of the law.[2]

      b. **Rent Discounts were Properly Excluded from the Regular Rate Calculation Because the Parties Did Not Regard Them as Wages and the Discount was Primarily for the Benefit of the Employer.**

            *i.   Applicable Law*

The FLSA definition of "wages" includes "the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees . . . ." 29 U.S.C. § 203(m). United States Department of Labor ("DOL") regulations speak further to the calculation of the "reasonable cost" of lodging. Specifically, "The term reasonable cost as used in section 3(m) of the Act is hereby determined to be not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees[,]" and "[r]easonable cost does not include a profit to the employer or to any affiliated person." 29 C.F.R. § 531.3(a) & (b).

Importantly, the regulations explain that "the cost of furnishing 'facilities' found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.3(d)(1); *see also* 29 C.F.R. § 531.32(c) (echoing this language). Further, these regulations

---

[2] The FLSA and the regulations promulgated pursuant to it are entitled to a "fair reading." *See Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018).

provide examples which the administrator has found to be primarily for the benefit of the employer, including "transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad," and "charges for rental of uniforms where the nature of the business requires the employee to wear a uniform." *See* 29 C.F.R. § 531.32(c); *see also* 29 C.F.R. § 531.3(d).  In other words, provision of items that are deemed essential to performing the job are found to be primarily for the benefit of the employer.  *See* 29 C.F.R. § 531.30 (emphasis added) ("The reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee only where customarily 'furnished' to the employee. Not only must the employee receive the benefits of the facility for which he is charged, *but it is essential that his acceptance of the facility be voluntary and uncoerced.*").

In calculating the regular rate, 29 C.F.R. § 531.37(b) explains, "the regular rate of pay is arrived at on the basis of the stipulated wage before any deductions have been made.  Where board, lodging, or other facilities are customarily furnished as additions to a cash wage, the reasonable cost of the facilities to the employer must be considered as part of the employee's regular rate of pay."  Notably, the calculation requires making a determination on "reasonable cost" *before* reaching the regular rate question.  The reasonable cost assessment turns on whether the facilities are primarily for the benefit or convenience of the employer.

Applying these provisions, DOL reviewed a nearly identical question to the one at bar in a 1999 opinion letter.[3]  *See* 1999 DOLWH LEXIS 92.  There, the inquiring party represented

---

[3] Guidance such as the referenced opinion letter are entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

8

"large apartment complexes," in which the supervisors were required to reside onsite as a condition of employment. The opinion letter states that units were provided "for substantially non-compensatory business reason for the convenience of the employer. Further, . . . residence at the apartment by the employee is not a voluntary act, the unit is not provided as a means of compensation, and it is not intended to transmit value to the employee." Finally, the letter notes that, "the Internal Revenue Code allows for exemption from income tax liability such lodging provided for substantially non-compensatory business reasons." *Id*. Based on these facts, DOL concluded that the furnishing of the facility was "a benefit to the employer and it need not be included in the employee's regular rate of pay." *Id*.

Courts, including the Second Circuit have followed this same logic. In *Soler v. G. & U., Inc.,* 833 F.2d 1104 (2d Cir. 1987), migrant farm workers brought an action under the FLSA against farm owners, seeking to recover wage deductions made by the owners for housing provided to the workers. The court applied a balancing test: "If the item in question primarily benefits the employer, the cost of that facility will not be recognized as reasonable and will not be an allowable inclusion in an employee's wage; if the item primarily benefits the employee, it will be construed to be a reasonable cost, like housing and meals, within the meaning of § 3(m)." *Id*. at 1009. The court explained that "where lodging is of little benefit to an employee," the cost of lodging will not constitute compensation received by the employee for purposes of the FLSA. *Id*. at 1109-10.

Since *Soler*, several courts have found that a rent discount should not be calculated as part of overtime. For example, *Schneider v. Landvest Corp.*, No. 03 CV 02474 WYD PAC, 2006 WL 322590 (D. Colo. Feb. 9, 2006) involved plaintiffs who were hired to manage Defendant's self-storage facilities. The court held that "because Plaintiffs' housing was

9

furnished primarily for the benefit of Landvest and because Plaintiffs were required to reside at the facility, . . . the value of their lodging should not be included in the computation of their regular rate." *Id.* at *28. Specifically, the court explained, "Plaintiffs were required, as a condition of their employment as full-time resident managers, to reside at the facility. They did not pay rent to reside at this apartment and their residence at the facility benefitted Landvest. Their residence at the facility added an appearance of added security. It also allowed both Plaintiffs and Landvest more flexibility in maintaining the facility and allowed Plaintiffs time off for slow periods." *Id.*

In *Jiao v. Shi Ya Chen*, No. 03 CIV. 0165 (DF), 2007 WL 4944767, at *14 (S.D.N.Y. Mar. 30, 2007), the plaintiff worked at a hotel and was required to live onsite.  The court explained "as Jiao was living on the hotel premises primarily for the benefit of his employer, the Court finds that 'special circumstances' exist to rebut the presumption under Section 203(m) that the cost of lodging should be factored into his compensation. . . . Accordingly, based on the evidentiary record of this case, the Court will not consider the cost of furnishing Jiao with housing in computing his weekly compensation." *Id*. at *14.  The court's decision was based on the facts that plaintiff "was required . . . to live at the hotel in order to assist late-arriving guests and to answer late-night telephone calls." *Id.*

Plaintiffs cite a number of cases that are distinguishable from the cases discussed above and the instant case.  For example, in multiple cases, employees were not required to live onsite as a condition of employment.  *See Moon v. Kwon*, 248 F.Supp.2d 201, 212 (S.D.N.Y. 2002) ("This does not, however, amount to a finding that the hotel required Moon to stay in the hotel overnight, whether in the basement or in a vacant guest room . . . . Moon himself admits that he was permitted to leave the hotel at night as long as he remained available and the hotel staff

could page him when necessary for emergency calls."); *Searcy v. T.F.R. Enterprises, Inc.*, No. 1-15-cv-381 RP, 2016 WL 7479158 at *1 (W.D. Tex. May 12, 2016) ("[A]vailability of the house is not promised, guaranteed, or considered a condition of employment."). In such cases, the lodging at issue was provided for the employee's convenience and benefit rather than the employer's.

Plaintiffs cite other cases in which employers used meals or lodging to meet their minimum wage or overtime obligations. *See Estanislau v. Manchester Developers, LLC*, 316 F.Supp.2d 104, 105 (D. Conn. 2004) (lodging was provided for the express stated purpose of compensating the plaintiff for the first twelve hours of overtime he worked each week); *Davis Bros., Inc. v. Donovan*, 700 F.2d 1368 (11th Cir. 1983) (employer attempted use credit for meals provided to employees to meet its minimum wage obligations); *Donovan v. Miller Properties, Inc.*, 711 F.2d 49 (5th Cir. 1983) (employer sought to credit the cost of furnishing lodging toward its minimum wage obligation); *Williams v. Seacrest Investments, Inc.*, No. 2:12—cv –01919—KOB, 2015 WL 1383941 at *2 (N.D. Ala. Mar. 23, 2015) (employer paid plaintiff below minimum wage and attempted to use meals provided to employee as a credit to meet minimum wage obligation). In these cases, unlike here, food and lodging were intended as compensation and used to meet the employer's minimum wage and overtime obligations.

Finally, Plaintiffs cite *William J. Lang Land Clearing, Inc. v. Adm'r, Wage & Hour Div., United States DOL*, 520 F.Supp.2d 870, 880 (E.D. Mich. 2007), which examines an entirely different question, but is nevertheless instructive. *William J. Lang Land Clearing* addressed whether the employer could take a fringe benefit credit for meals and lodging under the Davis-Bacon Act governing government contractors. Thus, the case addresses application and interpretation of an entirely different statutory scheme. Even so, the Court's discussion of the

11

meals and lodging at issue in that case are analogous to this case.  There, the Court explained, "[t]he employee lodging and food expenses in this case were clearly undertaken for Lang's benefit.  Lang could only perform its far distant [Davis-Bacon Act] contracts (and benefit thereby) if its employees incurred the substantial detriment of traveling to locals far from their homes for most of ever work week." *Id*. at 882 (internal quotations omitted).  Thus, *William J. Lang Land Clearing*, while not directly applicable, provides an example of when the provision of food and lodging are for the benefit of the employer rather than the employee.

> ii.  *Rent Discounts Were Primarily for Lindsey's Benefit.*

The facts are undisputed in this case that employees of the apartment complexes at which Lindsey provides management services are required to live in an apartment on those premises.  It is also undisputed that the furnishing of that apartment is for the benefit of the apartment communities.  Job Branch provided written sworn testimony that the requirement to live onsite has been in place for his entire tenure with Lindsey since 1987.  *See* Branch Aff. at ¶ 6.  Further, he provided a myriad of reasons how the policy benefits the apartment community, including: 1) the employees are the eyes and ears of the community; 2) the employees are more readily available to the residents of the community; 3) there is an added sense of security; 4) there is an added sense of community; 5) there is an added sense of pride and responsibility when employees live in the community; 6) marketing is enhanced when leasing agents tell prospective residents that all employees live in the complex; and 7) it ensures compliance with Arkansas and other state laws regarding leasing agents.  *See id.* at ¶¶ 8(a)-(f), 9.

Moreover, the opt-ins who were produced for deposition[4] almost universally agreed as to the benefit of having employees live on premises.  *See* Andrew Cox Deposition Excerpts ("Cox Dep."), attached to Motion as **Exhibit 5** at 29 ("Q: Did [residents] seem to like the fact they had somebody in maintenance that lived there too?  A:  Apparently because they knocked on my door all hours of the night so they must have enjoyed the heck out of it."); Stewart Hegemann Deposition Excerpts ("Hegemann Dep."), attached to Motion as **Exhibit 6** at 32 ("Q: Would you agree that having you and the other employees at Links provided a better sense of community for the residence (*sic*) there?  A:  I believe it did for them, yes."); Vivian Shubin Deposition Excerpts ("Shubin Dep."), attached to Motion as **Exhibit 7** at 14 ("Q: . . . And did you feel that it was a benefit to Lindsey to have you living on-site?  A: Yes, I do."); Jordan Hicks Deposition Excerpts ("Hicks Dep."), attached to Motion as **Exhibit 8** at 64 ("[T]hey wanted their employees to live on the property so they could keep an eye out, because mainly to have them there is more – it was just a better situation to have them living there than not.").  Thus, Plaintiffs have made no colorable showing that the rent discount was primarily for the benefit of employees.  Rather, the overwhelming evidence, including Plaintiffs' testimony, is that the discount was primarily for the benefit of the apartment community, not for the employees.

There could be cases where the furnishing of lodging would be primarily for the benefit of the employee, but this is not one.  For example, an employer could provide lodging at a remote work location, which would allow employees to live on site, rather than to travel long distances from home to work as in *William J. Lang Land Clearing*, 520 F.Supp.2d at 882.  In this

---

[4] Only seven (7) opt-ins were produced for deposition even though twenty (20) were noticed for deposition.  Those discovery issues will be the subject of additional motions by Defendants.

13

case, however, that is not true. For example, opt-in Edward Robinson testified that he lived only a very few blocks from the apartment complex at which he was hired. He also testified that he was living in a house owned by his mother, and that while she generally charged him rent, at the time he was hired, he was "getting a break" from his mother because he was then unemployed. *See* Edward Robinson Deposition Excerpts ("Robinson Dep."), attached to Motion as **Exhibit 9** at 9—10. This case clearly demonstrates the intended benefit was for the apartment community, and not for the employee. *See id.* at 19 ("Q: And so while you might have wanted to stay living with your mom, you had to move in there in order to take the job, correct? A: Yes, sir.").

### iii. Neither Lindsey Nor the Employees Considered the Rent Discount to be Wages.

Pursuant to 29 C.F.R. § 531.37(b), "Where board, lodging, or other facilities are customarily furnished *as additions to a cash wage*, the reasonable cost of the facilities to the employer must be considered as part of the employee's regular rate of pay." Thus, the inquiry is not simply whether the discounts were customarily provided, as Plaintiffs assert, but whether they were customarily provided "as additions to a cash wage." As noted above, the rent discount is excluded from the definition of "reasonable cost," because it was primarily for the benefit of Lindsey. Additionally, however, the record is clear that neither Plaintiffs nor Lindsey regarded the rent discount as a part of or in addition to a cash wage. This follows DOL's analysis in its 1999 opinion letter when it noted that lodging was "not provided as a means of compensation, and it is not intended to transmit value to the employee." 1999 DOL WH LEXIS 92.

Plaintiffs fail to cite any evidence that the furnishing of a rent discount was intended as or understood to be a part of their wages. As discussed further below, rent discounts were not reported as wages to employees for tax purposes pursuant to IRS regulations. Likewise, rent discounts did not appear on employee paystubs, and no value was assigned to the discount on the

14

employees' W-2s.  *See* Fox Aff. at ¶¶ 23—24; *see also* Hegemann Dep. at 31 ("Q: And [the rent discount is] not added into the wages on that W-2, is it?  A:  I don't see it on there.  Q:  Because if it would have been added your wages would have been a little higher than that, what's reflected in that?  A:  Of course.").  Further, rent discounts were not used to meeting Lindsey's minimum wage obligations.  The employees' view of the rent discount was evident from their testimony.  Indeed, multiple employees testified that they had not reported rent discounts as income.  *See* Hicks Dep. at 39—40 ("Q: But, to your knowledge, you never claimed any of that rent discount as wages on your taxes?  A:  No."); Hegemann Dep. at 31.

Here, there is no evidence Lindsey provided the rent discounts as a form of compensation to the apartment community employees.  This distinguishes the instant case from many of those relied on by Plaintiffs in which employers used lodging or meals to attempt to meet their minimum wage obligations.  *See, e.g.*, *Donovan v. Miller Props., Inc.*, 711 F.2d 49, 50 (5th Cir. 1983) (analyzing whether employer could take a credit on its minimum wage obligations for meals furnished to employees); *Davis Bros. v. Donovan*, 700 F.2d 1368, 1370 (11th Cir. 1983) (examining whether employer could deduct cost of meals and lodging from minimum wage obligation).  Here, Lindsey did not take any credit on its minimum wage obligation for the rent discounts, and they did not appear on paystubs, W-2s, or any other income-related documents.  Simply stated, the rent discounts were not to compensate employees but to benefit the apartment community owner.

    c. **Lindsey's Reading of the FLSA is Harmonious with Applicable IRS Regulations.**

Finally, IRS regulations regarding the treatment of meals and lodging with respect to the employee's gross income mirror DOL regulations regarding the regular rate.  Specifically, the value of lodging is not considered part of an employee's income if:

15

1. The lodging is furnished on the business premises of the Employer;

2. The lodging is furnished for the convenience of the Employer; and

3. The Employee is required to accept such lodging as a condition of his employment.

26 CFR § 1.119-1(b). These elements directly follow DOL's regulations and its application of the relevant regulations in its 1999 opinion letter. There DOL found that when an apartment complex supervisor was required to live onsite for the convenience of the employer as a condition of his employment, the provision of lodging was for the benefit of the employer, rather than the employee, and should not be included in the employee's regular rate. Plaintiffs point to *Baouch v. Wener Enterprises, Inc.*, 908 F.3d 1007, 1119 (8th Cir. 2018) for the proposition that income does not have to be taxed to be wages under the FLSA. In *Baouch*, the employer made seemingly conflicting arguments regarding whether certain reimbursements were for travel expenses. The court found, however, that the IRS and DOL regulations at issue were not "coextensive," and therefore the apparent inconsistency in the employer's claims were without consequence. Here, Lindsey treated its rent discounts consistently under both DOL and IRS regulations, which are themselves harmonious on this subject. The rent discount is neither wages nor income to the employees because it was provided for the benefit of the employer. A reading of either the DOL or IRS regulations to the contrary would cause significant confusion among employers.

### d. **Lindsey Made Good Faith Efforts to Comply with the FLSA.**

Defendants maintain that Lindsey properly did not include rent discounts in Plaintiffs' regular rates. Even if this Court finds to the contrary, however, Lindsey made good faith efforts to comply with the FLSA. Specifically, Lindsey has been involved in multiple other suits

involving Plaintiffs' counsel, including the *Lochridge* litigation in which Plaintiff's counsel raised no issues regarding Lindsey's rent discount. Further, during and since the *Lochridge* litigation, Lindsey has worked with counsel to examine its FLSA compliance, and the rent discounts were never identified as a potential violation of Lindsey's overtime obligations. Indeed, Lindsey revised some of its policies as a result of that review and consultation with counsel. *See Trans World Airlines, Inv. v. Thurston*, 469 U.S. 111, 129—30 (1985). Thus, Plaintiffs cannot show that "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *McLaughlin v. Richland Shoe, Co.*, 486 U.S. 128, 133 (1988). Because Lindsey's actions and/or omissions were not willful violations of the FLSA, the Court should apply a two-year statute of limitations should it find any violation. 29 U.S.C. § 255(a). Further, should this Court award any damages, it should exercise its discretion not to award any liquidated damages. *See* 29 U.S.C. § 260 ("[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages[.]").

## V. CONCLUSION

WHEREFORE for the foregoing reasons, Defendants Lindsey Management Co., Inc., and Scott Rogerson pray that this Court DENY Plaintiffs' Motion for Partial Summary Judgment, GRANT Defendants' Motion for Summary Judgment, for their costs, and for all other just and proper relief.

FEC\26907\0006\7390814.v1-12/9/19

Respectfully submitted,

Michael S. Moore (Ark. Bar No. 82112)
Friday, Eldredge & Clark, LLP
400 W. Capitol Ave., Ste. 2000
Little Rock, AR 72201
(501) 370-1526
mmoore@fridayfirm.com

*Attorneys for Defendants*
*Lindsey Management Co., Inc.*
*and Scott Rogerson*

FEC\26907\0006\7390814.v1-12/9/19