## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**JORDAN HICKS, individually and on behalf**
**of all others similarly situated**                                    **PLAINTIFF**

**v.**                              **Case No. 3:18-cv-00133 KGB**

**LINDSEY MANAGEMENT CO., INC.,**
**and SCOTT ROGERSON**                                           **DEFENDANTS**

### OPINION AND ORDER

Plaintiff Jordan Hicks brings this action individually and on behalf of all others similarly situated against defendants Lindsey Management Company ("Lindsey") and Scott Rogerson (hereinafter collectively "defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Arkansas Minimum Wage Act, Arkansas Code Annotated § 11-4-201, *et seq.* ("AMWA") (Dkt. No. 1).  On February 11, 2019, the Court conditionally certified the following class:  all hourly employees who lived on-premises, received a rent credit, and who worked more than 40 hours in any week since July 24, 2015 (Dkt. No. 19).

Before the Court is Mr. Hicks' motion for partial summary judgment (Dkt. No. 67). Defendants responded in opposition (Dkt. No. 81), and Mr. Hicks replied (Dkt. No. 90).  Also before the Court is defendants' cross-motion for summary judgment (Dkt. No. 83).  Mr. Hicks responded in opposition (Dkt. No. 90), and defendants replied (Dkt. No. 97).  For the following reasons, the Court denies Mr. Hicks' motion for partial summary judgment and grants defendants' cross-motion for summary judgment.

Also before the Court are defendants' motion to dismiss plaintiffs who have failed to fulfill their discovery obligations and motion to decertify the FLSA collective action (Dkt. Nos. 100, 102).  The Court denies as moot these motions (*Id.*).

## I.     Factual Background

Unless otherwise noted, the following facts are taken from Mr. Hicks' statement of undisputed material facts and defendants' amended response to plaintiff's statement of undisputed material facts (Dkt. Nos. 69, 85).  The facts are also taken from defendants' statement of undisputed material facts and Mr. Hicks' response to defendants' statement of undisputed material facts (Dkt. Nos. 84, 91).

Mr. Hicks and all opt-in plaintiffs (hereinafter collectively "plaintiffs") are current or former hourly-paid employees of apartment complexes managed by Lindsey (Dkt. No. 69, ¶ 1).[1] Lindsey is a company headquartered in Fayetteville, Arkansas, that manages apartment complexes in six states across the Southeast and Midwest United States (*Id.*, ¶ 2; Dkt. No. 84, ¶ 1).  Lindsey does not own the apartment complexes it manages; it has management agreements with the owners (Dkt. No. 69, ¶ 5; Dkt. No. 84, ¶ 2).  Lindsey controlled at all relevant times and continues to control the pay policies and practices applicable to plaintiffs (Dkt. No. 69, ¶ 3).  As part of the management of the apartment complexes, Lindsey hires employees to work in various positions such as maintenance workers and office assistants (*Id.*, ¶ 4).

Lindsey requires employees to live at the apartment complexes where they work (*Id.*, ¶ 6; Dkt. No. 84, ¶ 3).  Plaintiffs are required to live onsite regardless of whether they have other housing arrangements nearby (Dkt. No. 84, ¶ 6).  Defendants represent that multiple plaintiffs voluntarily left their employment when they chose to move offsite (*Id.*, ¶ 4).  Plaintiffs agree that

---

[1] Lindsey's business operates as dozens of separate partnerships and LLCs, each of which owns one or more of the apartment complexes managed by Lindsey (Dkt. No. 67-2, at 5-6). Defendants take the position that plaintiffs are not technically employees of Lindsey.  Defendants acknowledge that all of the policies and practices at issue in this lawsuit were created and enforced by Lindsey (*Id.*).  Plaintiffs do not ask the Court to decide at this time whether an employer-employee relationship existed, only whether Lindsey's policies violated the FLSA (Dkt. No. 68, at 3 n.1).

some plaintiffs quit their jobs and moved away from Lindsey apartment communities, but plaintiffs deny any implication about the plaintiffs' motives for quitting or moving (Dkt. No. 91, ¶ 4). Plaintiffs assert that all hourly-paid employees at apartment complexes managed by Lindsey receive a rent credit or discount in addition to their hourly wage (Dkt. No. 69, ¶ 7). Defendants deny this statement to the extent that it implies that Lindsey provides a rent discount as a form of compensation in addition to wages (Dkt. No. 85, ¶ 7). The discount is not included on the employees' paystubs, does not appear on employees' W-2s or any other income tax documents, and is not used to meet Lindsey's minimum wage obligations (*Id.*; Dkt. No. 84, ¶¶ 7-10).

The amount of an employee's rent discount varies based on the employee's job title; senior employees receive larger discounts than junior employees (Dkt. No. 69, ¶ 8). Plaintiffs claim that Lindsey determines the amount of a given position's rent discount based on the value of that position (*Id.*, ¶ 9). Defendants agree to the extent that plaintiffs intend that Lindsey determines the amount of a given position's rent discount based on the value of that position to the community (Dkt. No. 85, ¶ 9). Defendants contend that higher-ranked employees, and their presence onsite, become more valuable to the apartment communities in which they work (*Id.*). Plaintiffs allege that hourly employees at properties managed by Lindsey who are promoted from "regular" positions to "senior" positions may or may not receive an increase in their hourly wage, but all receive an increase in their rent discount (Dkt. No. 69, ¶ 11). Defendants assert that higher ranked employees receive a larger discount on rent as they, and their presence onsite, become more valuable to the apartment communities in which they work (Dkt. No. 85, ¶ 11). Defendants represent that all employees who move from a full-time regular position to a senior position receive a 100% rent discount and that it is the practice of some of the managers of the apartment communities to place employees and then give pay raises; some place employees and give pay

raises at a later date, if the employee decides to continue in the position or is performing the job adequately; and some place employees and do a version of both (*Id.*).

Plaintiffs aver that job listings on Lindsey's website advertise that hourly positions offer an hourly wage and apartment rent discount (Dkt. No. 69, ¶ 10). Defendants contend that plaintiffs' reference is an incomplete version of the job announcement placed on Lindsey's website, which omits language stating that living onsite at the apartment community is a requirement of the job (Dkt. No. 85, ¶ 10).

Defendants pay their hourly employees an overtime rate of one-and-a-half times their base hourly rate when they work more than 40 hours in a workweek (Dkt. No. 69, ¶ 12; Dkt. No. 84, ¶ 11). Lindsey does not include the rent discount when calculating hourly employees' overtime premiums (Dkt. No. 69, ¶ 13). Plaintiffs represent that Lindsey excluded the rent discount when calculating plaintiffs' overtime premiums based on its reading of the Internal Revenue Service ("IRS") regulations concerning the taxability of the discount, not on Department of Labor ("DOL") guidance (*Id.*, ¶ 14). Defendants agree that they referenced IRS regulations concerning the taxability of the discount, but defendants deny any implication that their treatment of rent discounts does not comport with DOL regulations (Dkt. No. 85, ¶ 14). Defendants represent that plaintiffs who were produced for deposition almost universally agreed as to the benefit of having employees live on premises (Dkt. No. 84, ¶ 5). Plaintiffs claim that those who testified generally agreed that both Lindsey and the employees benefitted from Lindsey providing employees with discounted apartments and having them live on premises (Dkt. No. 91, ¶ 5).

Defendants represent that *Chad Lochridge, et al. v. Lindsey Management, Co., et al.,* Case No. 5:12-cv-5047 TLB (W.D. Ark), was a case pending from March 15, 2012, to November 15, 2016, and involved hourly resident managers who are also part of this litigation (Dkt. No. 84, ¶ 12). Plaintiffs agree that both this litigation and the *Lochridge* litigation involved resident

managers, but plaintiffs deny that any of the resident managers who participated in the *Lochridge* litigation are plaintiffs here (Dkt. No. 91, ¶ 12). According to defendants, during the *Lochridge* litigation, information was produced as part of the discovery process which indicated that these employees were required to live onsite and that they received rent discounts (Dkt. No. 84, ¶ 13). Plaintiffs agree with the understanding that "these employees" means resident managers (Dkt. No. 91, ¶ 13). Defendants assert that at no time during the *Lochridge* litigation was any claim ever made that the discounted rent was a violation of the FLSA (Dkt. No. 84, ¶ 14). Plaintiffs deny defendants' statement regarding the *Lochridge* litigation as written and contend that rent discounts are not a violation of the FLSA, nor are plaintiffs contending as much. Instead, plaintiffs maintain that the central legal issue here is defendants' failure to account for the value of the rent discount when calculating the regular rate of pay for accurate overtime compensation (Dkt. No. 91, ¶ 14).

## II.    Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v.*

*Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.    Discussion

The parties' cross-motions for summary judgment involve the same legal issue — whether the rent discounts provided to plaintiffs must be considered part of plaintiffs' regular rate of pay for purposes of calculating overtime. Plaintiffs contend that they are entitled to summary judgment regarding defendants' liability in failing to include the rent discount in their overtime premiums. They claim that no reasonable jury could find that plaintiffs' rent discount was not part of their pay. Defendants also move for summary judgment, alleging that plaintiffs received a rent discount primarily for the benefit of the apartment community owner, and thus the rent discount should not be considered part of the plaintiffs' wages or regular rate of pay for purposes of calculating overtime.

Both parties concede that Lindsey paid hourly-paid employees overtime pay for hours worked more than 40 hours in a workweek and that the rent discount was not included in the calculation of the employee's regular rate of pay for purposes of calculating overtime pay. The question then, for resolving these cross-motions, is whether a genuine dispute of material fact exists as to whether the rent discount qualifies as wages under the FLSA.

### A.    Legal Standard Under The FLSA

The FLSA requires employers to pay non-exempt employees at a rate not less than one and one-half times an employee's regular rate for all hours worked more than 40 hours in a week. 29 U.S.C. § 207(a)(1). Under the FLSA an employee's regular rate includes all remuneration for employment paid to an employee, except for certain payments that are expressly defined and set forth in the statute. 29 U.S.C. § 207(e). "Wages" are defined under 29 U.S.C. § 203(m), which

states in pertinent part that a wage "paid to an employee includes the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, and other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m).

The Code of Federal Regulations ("CFR") speaks to several of these requirements. No distinction should be made whether the board, lodging, or other facilities are furnished in addition to, or deducted from, a stipulated wage. 29 C.F.R. § 531.29. As § 203 provides, the reasonable cost of board, lodging or other facilities may be considered as part of the wage only where "customarily" furnished to the employee. 29 C.F.R. § 531.31. The regulations provide that, for the reasonable cost of board, lodging, and other facilities to be included as part of the wage paid to an employee, it is essential that the employee's "acceptance of the facility be voluntary and uncoerced." 29 C.F.R. § 531.30. Also, the regulations address the calculation of the "reasonable cost" of board, lodging or other facilities and provide that "the term reasonable cost as used in [§] 203(m) of the Act is hereby determined to be not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees." 29 C.F.R. § 531.3(a).

In other words, and pertinent to this analysis, if the requirements of § 203 and these provisions are met, there is a presumption that the reasonable cost of lodging provided will be included as wages. However, as the regulations and caselaw explain, that presumption is rebuttable.

The regulations explain that, "the cost of furnishing 'facilities' found . . . to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.3(d)(1). Other sections of the

regulations explain that "facilities" must be "something like board or lodging" and that such items might include "housing furnished for dwelling purposes."  29 C.F.R. § 531.32(a).

The Court examines these requirements in the light of the undisputed record evidence in this case.

### B.    The Presumption Arises That Lodging Constitutes Wages

Based on the undisputed record evidence, for the reasons explained in this Order, the Court determines that the rent discount given by Lindsey to all plaintiffs presumptively qualifies as wages.  29 U.S.C. § 203(m).[2]  Lindsey "customarily" furnished the rent discount to all employees by requiring all employees to live onsite.  Because living onsite was a part of the job offer made to each plaintiff at the outset of his or her employment, with no evidence of coercion, the Court determines that, when the job offer was accepted by each plaintiff, each plaintiff's acceptance of the offer of a rent discount for required onsite living was voluntary and uncoerced.  The reasonable cost of the rent discount does not appear to be an issue before the Court at this time.

### 1.    Lindsey "Customarily" Furnished Lodging

Board, lodging, or other facilities are "customarily" furnished to an employee "if the facilities are furnished regularly by the employer to his employees or if the same or similar facilities are customarily furnished by other employees engaged in the same or similar trade, business, or occupation in the same or similar communities."  29 C.F.R. §531.31; *see Walling v.*

---

[2]  Mr. Hicks filed a notice of supplemental authority on March 24, 2020 (Dkt. No. 110). Mr. Hicks directs the Court to a recent opinion from the Eastern District of Texas in which the court denied the defendant's motion to dismiss.  *Demarret Jones v. Univesco, Inc.*, Case No. 4:19-cv-509 (E.D. Tex. Mar. 23, 2020).  There, the court explained that, "the FLSA, its implementing regulations, and interpretative case law all confirm that a rent discount customarily provided by an employer to its employee is a nonexcludable wage that should be included in the calculation of overtime pay."  *Id.*, at 4.  This Court agrees that a rent discount presumptively counts as wages. However, the supplemental authority does not change or impact this Court's analysis.  The cases are not positioned the same procedurally, and the primary benefit exception is not raised in the supplemental authority plaintiffs cite.

*Alaska Pacific Consolidated Mining Co.,* 152 F.2d 812 (9th Cir. 1945). The undisputed record evidence is that Lindsey required all hourly-paid employees who worked at the apartment complexes it managed to live onsite as a condition of employment. Therefore, the lodging facilities were furnished regularly and customarily to plaintiffs for purposes of § 203(m).

### 2.    Acceptance Of The Lodging Was Voluntary And Uncoerced

The regulations provide that, in order for the reasonable cost of board, lodging, and other facilities to be included as part of the wage paid to an employee, it is essential that the employee's "acceptance of the facility be voluntary and uncoerced." 29 C.F.R. § 531.30. Courts have found that acceptance of the facility may be voluntary and uncoerced, even if living in employer-furnished lodging is a condition of employment. *See Marshall v. Truman Arnold Distributing Co.*, 60 F.2d 906, 909 (8th Cir. 1981) (determining that "[t]he lessee was free to accept or reject the employment contract" that included an agreed price of $300.00 per month for the cost of lodging and that lodging was "the result of a voluntary contractual negotiation between the parties"; concluding the cost of lodging should be included in wages); *see also Roces v. Reno Hous. Auth.* 300 F. Supp. 3d 1172, 1189-91 (D. Nev. 2018) (finding that if an employee understood the live-in requirement when he accepted the job, and if acceptance of the job was voluntary and uncoerced, then initial acceptance of lodging was voluntary and uncoerced); *Lopez v. Rodriguez,* 668 F.2d 1376, 1380 (D.C. Cir. 1981) (finding same). However, whether living on-site is a condition of employment may be a factor in determining how much an employer and employee benefit from the arrangement. *See Jiao v. Shi Ya Chen,* Case No. 03-CV-0165 DF, 2007 WL 4944767, at *4 (S.D.N.Y. Mar. 30, 2007); *Schneider v. Landvest Corp.,* Case No. 03-CV-02474 WYC PAC, 2006 WL 322590, at *28 (D. Colo. Feb. 9, 2006).

Here, the undisputed record evidence is that defendants required employees, including plaintiffs, to live onsite as a condition of employment, regardless of whether employees lived

onsite prior to beginning employment or had other housing arrangements nearby (Dkt. No. 97, at 8).  Employees who chose to move offsite were required to terminate their employment (*Id.*, at 8-9).  Prospective employees were informed of the requirement before accepting a position, and there is no record evidence to indicate that any employee's decision to move onsite was involuntary or coerced.  Because plaintiffs were aware of the requirement to live onsite as a condition of employment at the time they were offered employment and agreed to the condition when they accepted the job offer, the Court concludes that plaintiffs' acceptance of the lodging was voluntary and uncoerced, despite the fact that it was a required condition of employment.

### C.    The Presumption That Lodging Constitutes Wages Is Rebutted

Section 203(m), if its requirements are met, creates a presumption that employer-provided housing is considered part of an employee's wages; however, the presumption is rebuttable.  "[T]he cost of furnishing 'facilities' found . . . to be primarily for the benefit of the employer will not be recognized as reasonable and may not therefore be included in computing wages."  29 C.F.R. § 531.3(d)(1).  Other sections of the regulations explain that "facilities" can be something like board or lodging and that such items might include "housing furnished for dwelling purposes." 29 C.F.R. § 531.32.

Defendants urge the Court to apply a balancing of the benefits standard to assess when the presumption is rebutted.  Under this approach, the cost of furnishing lodging to an employee is not included in the employee's wages when the benefits to the employer outweigh the benefits to the employee.  *See Schneider,* 2006 WL 322590, at *28 (finding the value of lodging not included in wages because storage facility managers' housing was furnished primarily for the benefit of the employer when the managers were required, as a condition of employment, to reside at the facility, their presence at the facility added an appearance of security, and their presence allowed both the managers and the employer more flexibility in maintaining the facility, even though the managers

did not pay rent and living onsite allowed the managers time off for slow periods); *Marshall v. De Bord,* Case No. 77-106-C DJM, 1978 WL 1705, at *6 (E.D. Okla. July 27, 1978) (concluding that the cost of furnishing an on-site apartment to managers of a nursing home should not be included in computing wages because the rooms were primarily furnished for the benefit of the employer when employees were required to live at the premises and at least one employee had to be available at all times).

Defendants contend that the DOL used the balancing of the benefits standard when it reviewed a question similar to the issue here. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1999 WL 1788149 (Sept. 1, 1999) (hereinafter "DOLWH 1999 WL 1788149"). The inquiring party represented large apartment complexes in which supervisors were required to live onsite as a condition of employment. *Id.* The inquirer claimed that the purpose was to provide a place to which tenants could go to communicate problems and a place to which contractors and other complex employees could go for instruction and, in some cases, materials. The inquirer represented that the lodging was provided "for a substantially non-compensatory business reason for the convenience of the employer" and that "the unit [was] not provided as a means of compensation, and [was] not intended to transmit value to the employee." *Id.* Based on these facts, the DOL concluded that:

> "where the employer requires the employee to occupy the unit as a condition of employment, provides the unit to the employee at no cost and it is understood that the furnishing of the apartment is not considered a part of the employee's wages," the furnishing of the facility was "a benefit to the employer and it need not be included in the employee's regular rate of pay."

*Id.*

Plaintiffs submit that a more stringent approach should apply to determine when the presumption is rebutted. Plaintiffs advocate for the Court to apply an approach they contend the Second Circuit Court of Appeals adopted in *Soler v. G. & U., Inc.,* 833 F.2d 1104, 1110 (2nd Cir.

1987).  Plaintiffs assert that "facilities" other than "board and lodging" are subject to a balancing test, but the presumption regarding board and lodging should be treated differently.  Plaintiffs focus on language in the *Soler* opinion and maintain that the presumption regarding board and lodging should be overcome only "by substantial evidence demonstrating that the housing is not a benefit running primarily to the employee, but rather a burden imposed upon the employee in furtherance of the employer's business . . ." *Id.*

In *Soler,* the Second Circuit reversed the district court's decision that concluded, when conducting a review under the Administrative Procedures Act, 5 U.S.C. § 551, *et seq.*, the DOL's Wage and Hour Administrator's decision was arbitrary and capricious.  *Id.,* at 1105.  The language plaintiffs highlight is included in a longer passage describing what the Second Circuit requires to rebut the wage presumption.  In explaining this standard with respect to lodging and board, the Second Circuit explained:

> This is not to say, however, that in all cases the statutory presumption that housing and board are reasonable costs exempts on-site housing facilities from the scrutiny of the Regulation's balancing test safeguard.  Special circumstances may exist where lodging is of little benefit to an employee, such as when an employer requires an employee to live on-site to meet a particular need of the employer, *see Marshall v. Truman Arnold Distrib. Co., Inc.,* 640 F.2d 906 (8th Cir. 1981) (Secretary of the Department of Labor argued that gas station employee was on premises to deter vandalism), or when an employee is required to be "on call" at the employer's behest.  Recourse to the Regulation's protection is best left to the Administrator's judgment based on the facts of particular cases submitted to him.  Where the statutory presumption is rebutted by substantial evidence demonstrating that the housing is not a benefit running primarily to the employee, but rather a burden imposed upon the employee in furtherance of the employer's business, the Administrator is empowered to find that the cost of on-site housing is not reasonable, and therefore may not be subsumed within an employee's wage.
>
> We conclude that as a general rule the Administrator may rely on the statutory presumption accorded housing facilities under § 3(m), but that in appropriate circumstances, as determined by the Administrator, the presumption is subject to challenge and rebuttal under the Regulation's balancing of benefits standard.

*Id.,* at 1109-10.

There is little case law in the Eighth Circuit regarding the issue of employer-furnished lodging and its effect on an employee's regular rate of pay. The Eighth Circuit has not directly addressed the level of proof necessary to rebut the presumption. In *Marshall,* the Eighth Circuit case cited in *Soler*, the court examined and rejected the Secretary of Labor's argument "that the quarters were for the primary benefit of the company in that they deterred crime and vandalism." 640 F.2d at 909. There, the *Marshall* court considered the benefit of the living arrangement to the employer and employees. *Id.*. It recognized that the company gained some incidental benefit from the employee living on the premises of a non-24-hour gas station, such as crime and vandalism deterrence. *Id.* However, the court found that the living arrangement was the result of a voluntary contractual negotiation between the parties and that the primary benefit was to the employee. *Id.* Accordingly, the *Marshall* court found that the contractual value of rent should be included in computing the employees' wages. *Id.*

When determining the scope of a statute like the FLSA, a court must first look to its language, giving the words used their ordinary meaning. *Moskal v. United States,* 498 U.S. 103, 108 (1990). The Court gives the words used in regulations promulgated pursuant to the FLSA their ordinary meaning, as well. Section 531.3(d)(1) of the regulation states that the cost of furnishing facilities which are *primarily* for the benefit or convenience of the employer will not be included in computing wages. The word primarily indicates that the benefit must run mostly to the employer, not exclusively. The language of the regulation does not indicate that the employee must be burdened by the use of the furnished facility. A plain reading of the regulation suggests that a balancing test is appropriate when determining whether the presumption is overcome.

This is consistent with the approach taken by the DOL as evidenced by the opinion letter cited by defendants. *See* DOLWH 1999 WL 1788149. In the opinion letter, the DOL recognized that the employees received a benefit from residing in rent-free apartments in an apartment

complex; however, the DOL determined that the employer primarily benefitted and that, therefore, the cost of the apartment should not be included in the employees' wages. *Id.* The Eighth Circuit has determined that although "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference, . . . [they] are entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), based on their persuasiveness." *Baouch v. Werner Enterprises, Inc.*, 908 F.3d 1107, 1117 (8th Cir. 2018), *cert. denied*, 140 S. Ct. 122 (2019) (internal citations omitted). The Court finds the DOL opinion letters "persuasive" and does "not discount the expertise offered by the DOL, as it handles and regulates the application of the FLSA." *Id.*

For these reasons, the Court applies the balancing of the benefits standard articulated by the Eighth Circuit in *Marshall* and implemented by the DOL to determine whether the presumption has been rebutted.

### 1.    Treatment Of Rent Under IRS Regulations

As an initial matter, the Court examines the arguments related to IRS treatment of rent discounts. For purposes of this case, the Court determines that IRS treatment of rent and the parties' tax treatment of rent constitute factors to be considered when resolving the balancing test required by the FLSA, but the Court does not consider these dispositive factors.

Defendants maintain that, in practice, neither plaintiffs nor defendants regarded the rent discount as a part of or an addition to a cash wage (Dkt. No. 81, at 14). They represent that the rent discounts were not reported as wages to employees for tax purposes, did not appear on employee paystubs, and were not used to meet Lindsey's minimum wage requirements (*Id.*, at 14-15). Defendants claim that the employees did not view the rent discount as wages because they did not report the discount as income for tax purposes (*Id.,* at 15). This record evidence is not

refuted.  Defendants rely on these facts and cite the DOL Opinion Letter in further support of their argument that the rent discount was not provided as a means of compensation, was not intended to transmit value to the employee, and should not be part of wages.  DOLWH 1999 WL 1788149, at *1.

Defendants assert that their reading of the FLSA to exclude rent as wages under these circumstances is harmonious with applicable IRS regulations, which state that the value of lodging is not considered part of an employee's income if:  (1) the lodging is furnished on the business premises of the employer; (2) the lodging is furnished for the convenience of the employer; and (3) the employee is required to accept such lodging as a condition of his employment (Dkt. No. 81, at 6).  26 C.F.R. § 1.119-1(b).  Defendants claim that Lindsey treated the rent discount consistently under both DOL and IRS regulations and that these regulations are harmonious on the subject (Dkt. No. 81, at 6).  Defendants warn that a reading of either the DOL or IRS regulations to the contrary would cause significant confusion among employers (*Id.*).

Plaintiffs argue that the tax code and FLSA are independent statutory schemes, each with its own set of rules (Dkt. No. 90, at 6).  Plaintiffs point to several district court cases and represent that those courts determined that the characterization of wages under one statute has nothing to do with its corresponding characterization under the other (*Id.*, at 6-7).  *See Clarke v. AMN Servs. LLC,* Case No. CV 16-4132 DSF (KSX), 2017 WL 6942755, at *2 (C.D. Cal. Oct. 12, 2017); *Houston Police Officers' Union v. City of Houston Police Dep't,* Case No. CIV.A. H-00-2184, 2001 WL 36103817 (S.D. Tex. Sep. 25, 2001); *Harrell v. Diamond A Entm't,* 992 F. Supp. 1343, 1353 (M.D. Fla. 1997).

Both parties also point to *Baouch v. Werner Enterprises,* in which the Eighth Circuit examined whether a party's characterization of meal compensation to the IRS precluded him from making the opposite characterization for FLSA purposes.  908 F.3d, at 1112.  In *Baouch*, the Eighth

Circuit determined that the IRS and FLSA regulations at issue with respect to meals were not coextensive and that the apparent inconsistencies in the employer's claims were without consequence. Here, Lindsey takes a consistent position under the IRS and FLSA provisions; no estoppel argument applies. As a result, *Baouch* has limited application to the facts of this case.

The Court views the parties' treatment of rent under IRS regulations as one factor to consider when resolving the balancing test required by the FLSA. Given the undisputed facts in this case, the Court determines that this factor weighs in favor of defendants' claim that the rent discounts provided to plaintiffs should not be considered part of plaintiffs' regular rate of pay for purposes of calculating overtime compensation under the FLSA.

### 2.    Assessing the Primary Benefit

Defendants contend that the rent discount primarily benefitted the employer and placed a burden on plaintiffs because all employees had to live onsite and because, by living onsite, employees essentially were on-call to perform additional work for their employer. It is undisputed that about 75% of employees had existing housing elsewhere before working at the apartment complexes (Dkt. No. 97, at 8). Defendants point to opt-in plaintiff Edward Robinson as an example (*Id.*). Mr. Robinson testified that he lived a few blocks from the apartment complex at which he was hired and lived in a house owned by his mother rent-free (*Id.*). Defendants assert that this shows that the benefit of employees living onsite was intended for the apartment community, not the employees (*Id.*). Defendants also claim that the housing was a burden to employees because employees had to resign when they decided to move offsite; plaintiffs had no choice but to reside on the property (*Id.*, at 9).

Defendants contend that the apartment rent discount was listed on the website not as a benefit of employment but to notify potential employees that living onsite was a mandatory job requirement, which could detract qualified individuals (*Id.*, at 12). Plaintiffs claim that, despite

defendants' claim that the rent discount was a benefit for the apartment community and not the employee, it is not how Lindsey treated the discount in practice (Dkt. No. 90, at 10). Plaintiffs claim that Lindsey advertised the rent discount to prospective employees by listing "hourly wage [and] apartment rent discount" as two things each hourly position offered (*Id.*, at 11).

Plaintiffs also claim that the rent discount was treated as compensation in practice because Lindsey used the rent discount as a substitute for cash pay raises (*Id.*). Employees received different rent discounts, including some that received free rent, depending on the employees' positions, according to plaintiffs (Dkt. No. 97, at 12). Plaintiffs assert that an increased rent discount was used as all or part of the raise received when an employee was promoted (Dkt. No. 68, at 9).

Defendants deny this and claim that rent discounts increased for higher ranked positions because the employee's presence onsite became more valuable to the community (Dkt. No. 97, at 12). Defendants claim that some of the managers of the apartment communities promoted employees and gave pay raises; some promoted employees and gave pay raises at a later date, if the employee decided to continue in the promoted position or was performing the job adequately; and some managers promoted employees and did a version of both (Dkt. No. 81, at 4).

Defendants also cite in support of their argument that the rent discount was primarily a benefit to the employer, not the employee, couples who were both employed at the properties to which Lindsey provided management services. Couples who lived in the same apartment unit only received one rent discount (Dkt. No. 97, at 9). There is undisputed record evidence with respect to Iris and Joseph Granville that supports this (*Id.*). Defendants maintain that there are other married couples among the opt-in plaintiffs who are in this situation and that plaintiffs never complained about this situation (*Id.*, at 10). Plaintiffs cite no record evidence to refute this.

17

Certain authorities cited seem to indicate that, if lodging is to be provided as a benefit primarily for the employer, there should be no charge for the lodging.[3]  *See* DOLWH 1999 1788149 (concluding that, "where the employer requires the employee to occupy the unit as a condition of employment, provides the unit to the employee at no cost and it is understood that the furnishing of the apartment is not considered a part of the employee's wages," the furnishing of the facility was "a benefit to the employer and it need not be included in the employee's regular rate of pay.").  However, other authorities seem to suggest that reduced-rent apartments are susceptible to a weighing of the benefit analysis, as well, not only rent-free apartments.  *See* U.S. DOL Field Assistance Bulletin No. 2015-1, (Dec. 17, 2015),[4] (hereinafter "DOL Field Assistance Bulletin No. 2015-1") (giving as an example a "reduced-rent apartment" provided to a handyman who provides services to the apartment complex).  Not even plaintiffs contend that this is a dispositive factor.  Instead, all seem to agree that it is one of the factors to be considered.  Based on the Court's review, questions of valuation of the benefit seem to relate to assessing a value to determine the appropriate wage calculation, if the employee primarily benefits from the lodging. Finding no contrary controlling authority, the Court will consider this as a factor in the analysis, although not a dispositive factor.

Plaintiffs also maintain that, although defendants may be able to cite to isolated examples of employees who felt inconvenienced by living in an apartment managed by Lindsey, most employees appreciated living onsite and were provided with something of value in exchange for

---

[3]  In his response to defendants' cross-motion for summary judgment, Mr. Hicks claims that, if having employees on site was primarily for Lindsey's benefit, then Lindsey violated the FLSA by charging plaintiffs any rent at all (Dkt. No. 90, at 13).  Mr. Hicks did not claim that defendants failed to satisfy minimum wage obligations in his complaint; this claim is not before the Court.  Further, based on the record evidence before it, the Court is skeptical that such a claim is colorable.  *See* 29 CFR § 531.36.

[4]  Available at https://www.dol.gov/agencies/whd/field-assistance-bulletins/2015-1.

their work (*Id.,* at 9-10).  However, defendants claim that plaintiffs were burdened, and the employer primarily benefitted, because living on site subjected plaintiffs to additional work outside of normal business hours (Dkt. No. 97, at 9).

Defendants cite in support another DOL opinion letter which states that housing furnished to an employee is not allowed to be considered part of an employee's wages "when the employer requires an employee to leave an existing home and live on the employer's premises to be 'on call' to meet the needs of the employer.  In such cases, the housing is considered to be furnished primarily for the benefit of the employer and the employer is not entitled to have the cost included in computing wages under Section 203(m) of the FLSA."  U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1996 WL 34917380, at *1 (Nov. 5, 1996) (hereinafter "DOLWH 1996 WL 34917380").  The inquirer asked whether a rental property owner could deduct from wages paid to maintenance employees the cost of an apartment furnished to the employees, and if so how to value the appropriate amount of the deduction.  *Id.*

Defendants present undisputed record evidence, the affidavit of Job Branch, that explains how requiring employees to live onsite benefits the employer and the apartment communities. Defendants and the apartment communities benefitted from the presence of employees living onsite because employees could be the eyes and ears of the community; it allowed employees to be more readily available to the residents of the community; it added a sense of security and community; it added a sense of pride and responsibility for employees living in the community; it enhanced marketing because leasing agents could tell prospective residents that all employees live in the community; and it ensured compliance with state laws regarding leasing agents (Dkt. No. 97, at 6).  Defendants represent that real estate laws and regulations in Arkansas and some other states require that apartment managers and leasing agents be licensed if these individuals do not live at the apartments where they work (*Id.*, at 7).

Defendants also assert a benefit because plaintiffs were regularly on call and available at the apartment complexes when tenants needed assistance during non-business hours (*Id.*, at 7, 9). Plaintiffs come forward with no record evidence to refute this. In fact, in their briefings, plaintiffs state: "Lindsey benefitted from having employees available to watch the property and respond to emergencies at all hours. . . ." (Dkt. No. 90, at 8). In other words, plaintiffs present no record evidence to dispute that plaintiffs were regularly on call and available at the apartment complexes when tenants needed assistance during non-business hours.

Defendants cite this Court to DOL Field Assistance Bulletin No. 2015-1, specifically the section on Credit Toward Wages Under Section 3(m) of the FLSA for Lodging Provided to Employees, which explains that, where an employee provides round-the-clock care, or if the employee's sleep or off-duty time is regularly interrupted to perform work for the employer, the lodging typically will be deemed as primarily for the benefit of the employer. The DOL provides two examples to demonstrate this. In the first example, the DOL cites a property management company providing a plumber with a reduced-rent apartment in one of its complexes in exchange for the plumber being available two weekends per month for emergency calls. *Id.* The DOL characterizes this scenario as weighing in favor of a finding that lodging is primarily for the benefit of the employee. In the second example, the DOL cites a property management company providing a handyman with a reduced-rent apartment when the handyman who provides services to the apartment complex in which he resides is constantly responding to emergency calls during his off-duty hours. *Id.* The DOL describes this scenario as weighing in favor of finding that lodging is primarily for the benefit of the employer.

Despite this, plaintiffs argue that it can hardly be said that living in a marketable apartment at a reduced rent was a burden imposed on the employees (Dkt. No. 90, at 9). They represent that some employees were already living in the apartment complexes when they began working for

defendants (*Id.*).  These employees stayed in the same apartment they lived in before and started to receive a rent discount when they began their employment at the apartment complexes (*Id.*).  Plaintiffs contend that they benefitted because they received fully functional, private apartments designed and maintained for normal residential use at a discounted rate (Dkt. No. 90, at 5).  Plaintiffs occupied the same apartments that were available to regular tenants and also had access to amenities such as a pool, clubhouse, and golf course, all for a fraction of the market value or for free (*Id.*, at 8).  Plaintiffs differentiate their situation from cases in which an employee lived in harsh or uncomfortable accommodations that were provided exclusively for the benefit of the employer (*Id.,* at 4).

The Court recognizes that this scenario is different from situations where an employee was required to live in harsh or uncomfortable conditions or arguably substandard housing for an employer's benefit.  *See Bailey v. Pilots' Assoc. for Bay & River Del.,* 406 F. Supp. 1302 (E.D. Pa. 1976) (employee was provided temporary sleeping quarters on a boat and in a shore-side station during seven-day periods of duty); *Jiao*, 2007 WL 4944767, at *4 (hotel employee was required to remain at the hotel at all times other than Thursday afternoons, was sometimes provided a hotel room to sleep in when occupancy permitted, and was sometimes required to sleep on a sofa in the lobby).

However, plaintiffs concede that only 25% of employees previously lived onsite prior to taking the job, not the majority.  Living onsite was a condition of the job; it was required for all.  More importantly, based on the DOL Field Assistance Bulletin No. 2015-1, "[e]ven when the employee is provided private living quarters, however, lodging will typically be deemed primarily for the employer's benefit if the employee is 'on-call' 24 hours a day or his or her sleep and off-duty time is regularly interrupted."  *See also Soler*, 833 F.2d at 1109-10; DOLWH 1996 WL 34917380, at *1.

The undisputed record evidence is that the employer's work made considerable demands on plaintiffs' time (Dkt. No. 97, at 9).  Lindsey maintains that plaintiffs were regularly on call and regularly worked overtime.  Lindsey cites the deposition testimony of one of the opt-ins who worked as a maintenance manager and testified about residents knocking on his door at all hours of the night.  Plaintiffs acknowledge that Lindsey benefitted from having employees available to respond to emergencies at all hours (Dkt. No. 90, at 8).

Balancing the benefits to each party, considering the undisputed record evidence and the controlling and persuasive authorities cited, the Court determines that the employer primarily benefitted from the onsite living requirement and rent discount.  The Court concludes that the presumption is rebutted in this case and that the rent discount should not be considered wages for determining the employees' regular rate of pay for purposes of calculating overtime compensation.  Accordingly, the Court denies Mr. Hicks' motion for partial summary judgment and grants defendants' cross-motion for summary judgment with respect to Mr. Hicks' FLSA claims.

> **D.    The Court Denies Mr. Hicks' Motion For Partial Summary Judgment And Grants Defendants' Cross-Motion For Summary Judgment With Respect To Mr. Hicks' State-Law Claims.**

The parties here draw no distinction in their briefing between the FLSA and the AMWA as applied to these facts.  Because "[t]he AMWA has been interpreted to impose the same overtime requirements as the FLSA," there is no need to separately and distinctly evaluate these claims, as the facts arising under each claim are the same and the requirements under each law are the same. *Helmert v. Butterball, LLC,* 805 F.Supp.2d 655, 663 n.8 (E.D. Ark. 2011) (citing *Phillips v. Pine Bluff,* No. 5:07-cv-00207, 2008 WL 2351036, at *5 (E.D. Ark. Jun. 4, 2008)).  Accordingly, the Court denies the Mr. Hicks' motion for partial summary judgment and grants defendants' cross-motion for summary judgment with respect to Mr. Hicks' AMWA claims.

## IV.    Conclusion

For these reasons, the Court denies Mr. Hicks' motion for partial summary judgment and grants defendants' cross-motion for summary judgment (Dkt. Nos. 67, 83).  The Court denies as moot defendants' motion to dismiss plaintiffs who have failed to fulfill their discovery obligations and motion to decertify the FLSA collective action (Dkt. Nos. 100, 102).

It is so ordered this 23rd day of April, 2020.

Kristine G. Baker
United States District Judge